# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HARRY E. WILLIAMS and** : | |
| **BEVERLY WILLIAMS,** : | Civil Action No. 1:04-CV-2762 |
| : | |
| **Plaintiffs** : | (Judge Kane) |
| : | |
| v. : | |
| : | |
| **GENERAL ELECTRIC COMPANY,** : | |
| **et al.,** : | |
| : | |
| **Defendants** : | |

## ORDER

Before the Court is Plaintiff's motion to remand this asbestos action to the Dauphin County Court of Common Pleas. (Doc. No. 4.) Defendant opposes the motion, claiming that it is entitled to remove this action to federal court pursuant to the Federal Officer Removal statute, 28 U.S.C. § 1442(a)(1). Plaintiff disputes that the Federal Officer Removal statute is applicable to this action. Upon careful consideration of the relevant law, and the pleadings and supporting documents submitted by both Plaintiff and Defendant, the Court finds that Defendant has failed to demonstrate that the Federal Officer Removal statute applies in this case. Accordingly, the Court finds that it lacks subject matter jurisdiction over this action, and the case will be remanded to the Dauphin County Court of Common Pleas.

## I.      BACKGROUND

### A.      Plaintiffs' Allegations

On December 1, 2004, Plaintiffs Harry and Beverly Williams sued General Electric Company ("GE") and a number of other defendants in the Dauphin County Court of Common Pleas alleging,

among other things, that Harry Williams was exposed to asbestos-containing products while he served in the United States Navy at a number of Naval shipyards, repair stations, and aboard Navy ships between 1948 and 1966, and also during his employment as a steelworker between 1968 and 1990 with the former Bethlehem Steel Corporation at that company's plant in Steelton, Pennsylvania. Plaintiff alleges that in March 2003 he was diagnosed with "an asbestos-related injury" and that he currently suffers from, inter alia, asbestosis.

### B. Grounds for Removal

In its notice of removal, GE avers that Plaintiff's complaint identifies "specific General Electric equipment, i.e. turbines, that were specifically designed for use in accordance with the specifications and control of the Secretary of the United States Navy and its officers." (Doc. No. 1, at ¶ 6.) Defendant thus asserts that its basis for removal of this action is that in providing turbines to the United States Navy, GE "acted under the authority of an officer or agency of the United States . . . ." (Id., at ¶ 7.) Accordingly, GE asserts that it is entitled to remove this action pursuant to 28 U.S.C. § 1442(a)(1). (Id.)

In support of its brief opposing Plaintiffs' motion for remand, GE has proffered the affidavit of David Hobson, dated October 27, 1998, more than six years prior to this litigation. (Doc. No. 8, Ex. 1, Affidavit of David Hobson) (hereinafter, "Hobson Aff."). Mr. Hobson attests that he was employed by GE from 1969 to 1996. (Hobson Aff, at ¶ 1.) During his time of employment with GE, Mr. Hobson claims to have had "frequent and extensive business dealings with commissioned officers and civilian employees of the United States Navy in connection with the Navy's design, purchase, and use of marine steam turbines, principally those manufactured by GE." (Id., at ¶ 2.) Hobson attests that the

Navy "purchased marine steam turbines from GE for installation aboard Navy ships and submarines by Navy shipbuilders." (Id.) In addition, Hobson notes that he has "studied military specifications and other documents dating back to World War II" regarding marine steam turbines, and has conferred with unnamed "naval officials and others involved in naval shipbuilding" during the course of frequent trips to naval shipyards and his time aboard naval vessels, including submarines. (Id., at ¶ 3.) As a result of this extensive experience, Mr. Hobson claims to "possess thorough knowledge of the historical practices of GE with regard to marine steam turbines that were purchased from GE by the Navy" for installation and use aboard Navy ships and submarines. (Id., at ¶ 4.) Hobson's brief affidavit concludes by explaining how the marine steam turbines GE manufactured and shipped to the Navy did not contain any thermal insulation materials (containing asbestos, or otherwise), and were manufactured and shipped with only a coat of paint over the surface of the metal. According to Hobson, "GE did not manufacture, sell, distribute, or supply marine turbines equipped with thermal insulation, nor did it specify the material to be used to insulate its marine turbines." (Id., at ¶ 5.) Moreover, Hobson attests that any insulation materials that may have been applied to GE turbines after they were shipped from GE manufacturing facilities would have been supplied and installed by entities other than GE. (Id., at ¶ 6.)

## II.  APPLICABLE LAW

The Federal Officer Removal statute, 28 U.S.C. § 1442(a) provides, in relevant part:

> A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district of the United States for the district and division embracing the place wherein it is pending:

> (1)  The United States or any agency thereof or any officer (or any other person acting under that officer) of the United States or of any agency thereof, sued in an official capacity for any act under color of such office.

28 U.S.C. § 1442(a)(1). The statute provides an exception to the well-pleaded complaint rule in that it serves as a method to remove a case brought in state court against a federal officer, or any person acting under a federal officer, even without the existence of a federal cause of action, so long as the removing party asserts a colorable federal defense to the state claims. Mesa v. California, 489 U.S. 121, 136 (1989) ("[the federal officer removal statute] is a pure jurisdictional statute, seeking to do nothing more than grant district court jurisdiction over cases in which a federal officer is a defendant"). The purpose behind the statute is to prevent state courts from interfering with the implementation of federal law, id. at 126, and this aim is meant to be achieved by allowing those whose federal activity may be inhibited by state courts to remove an action to a federal forum. See Arizona v. Manypenny, 451 U.S. 232, 241-42 (1981) ("removal under § 1442 (a)(1) and its predecessor statutes was meant to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties. The act of removal permits a trial upon the merits of the state-law question free from local interests or prejudice").

A defendant seeking removal bears the burden of demonstrating federal subject matter jurisdiction. Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). In order to establish removal jurisdiction pursuant to 28 U.S.C. § 1442(a), a defendant must establish that (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are predicated upon the defendant's conduct "acting under" a federal officer; (3) it has a colorable federal defense to the claims; and (4)

there is a causal nexus between the claims and the conduct performed under color of a federal office. Feidt v. Owens Corning Fiberglass Corp., 153 F.3d 124, 127 (3d Cir. 1998) (citations omitted).

Although federal courts traditionally construe removal statutes narrowly and remand doubtful cases to state court, the Supreme Court has noted that "the federal officer removal statute is not narrow or limited." Willingham v. Morgan, 95 U.S. 402, 406 (1969) (quotation marks omitted). Indeed, the Court has also explained that "the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" Manypenny, 451 U.S. at 242 (quoting Willingham, 395 U.S. at 407). See also Sun Buick, Inc. v. Saab Cars USA, Inc., 26 F.3d 1259, 1262 (3d Cir. 1994) (noting that the provisions of the federal officer removal statute are to be "broadly construed").

Notwithstanding its broad application, because the federal officer removal statute is predicated "on the protection of federal activity and an anachronistic mistrust of state courts' ability to protect and enforce federal interests and immunities from suit, private actors seeking to benefit from its provisions bear a special burden in establishing the official nature of their activities." Freiberg v. Swinerton & Walberg Property Svcs., Inc., 245 F. Supp. 2d 1144, 1150 (D. Col. 2002) (original emphasis) (citing Ryan v. Dow Chemical Co., 781 F. Supp. 934, 950-51 (E.D.N.Y. 1992). With these considerations in mind, the Court will turn to the elements set forth in Feidt that Defendant must demonstrate to invoke this Court's jurisdiction under 28 U.S.C. § 1442(a)(1).[1]

---

[1] Plaintiff does not challenge the first such requirement, namely, that Defendant constitutes a "person" under 28 U.S.C. § 1442(a), and the Court assumes for purposes of this opinion that as a corporation, GE is considered to be a person under the statute.

### III.     DISCUSSION

#### A.     Colorable Federal Defense

Courts are to construe a removing party's assertion of a colorable federal defense liberally. "We . . . do not require the officer virtually to 'win his case before he can have it removed.'" Jefferson County v. Acker, 527 U.S. 423, 431 (1999) (quoting Willingham, 395 U.S. at 407). Thus, GE need not demonstrate for purposes of removal that its asserted defense is meritorious, but only that it has a colorable claim to invoke such a defense. Mesa, 489 U.S. at 128-29.

In this case, GE has asserted the federal common law government contractor defense, which was enunciated in Boyle v. United Technologies Corp., 487 U.S. 500 (1988). The defense shields contractors from liability under state tort law for defects in military equipment supplied to the United States when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Id. at 512; see also Carley v. Wheeled Coach, 991 F.2d 1117, 1119 (3d Cir. 1993) (discussing Boyle and elements of contractor defense).

A review of the complaint, Defendant's brief in opposition to Plaintiff's motion for remand, and particularly the Affidavit of David Hobson, reveals that GE has failed to articulate and support its claim to the federal common law government contractor defense. First, the Court notes that nothing in the complaint specifically alleges that Plaintiff's asbestosis relates to materials GE is claimed to have supplied the Navy. Instead, Plaintiffs allege that Harry Williams was exposed to various asbestos-containing products of GE "including, but not limited to, electrical products; in addition, motors, vessels

6

and turbines which specified the installation of asbestos-containing products." (Complaint, at 18.) Notwithstanding the generality of this allegation, the Court acknowledges that Plaintiff's averment suggests GE's asbestos-containing products may have been found on Naval "vessels" or "turbines," which may have been located on Navy ships.[2] Nevertheless, the only aspect of Mr. Hobson's limited affidavit that even addresses cursorily a contractual relationship between the Navy and GE is itself vague and provides no claim or detail regarding GE's contracts with the Navy for marine steam turbines:

> During my 27 years of employment with GE, and in my employment since then, I have had frequent and extensive business dealings with commissioned officers and civilian employees of the United States Navy in connection with the Navy's design, purchase, and use of marine steam turbines, principally those manufactured by GE. The Navy purchased marine steam turbines from GE for installation aboard Navy ships and submarines by Navy shipbuilders.

(Doc. No. 8, Hobson Aff., at ¶ 2.) Nothing in this testimony provides that the Navy provided precise specifications for any turbines it may have ordered and acquired from GE, nor that the equipment supplied conformed with such specifications, nor that GE warned the Navy regarding any potential dangers of which it was aware and of which the Navy was unaware. As such, the Hobson Affidavit

---

[2] Plaintiffs have endeavored to limit the scope of their allegations against GE in their brief in support of remand, asserting that their claims against GE are based upon Harry Williams's employment at Bethlehem Steel's Steelton, Pennsylvania facility. (Doc. No. 4, at ¶ 5.) According to Plaintiffs, "[d]iscovery conducted in the separate lawsuits of many of Williams' co-workers with Bethlehem Steel have established the presence and use of GE products at that plant." (Id.) Notwithstanding this apparent admission, and effort to limit their claims against GE, the Court does not rely on Plaintiffs' attempt to narrowly characterize the allegations contained in the complaint for purposes of this decision. See Angus v. Shiley, Inc., 989 F.2d 142, 145 (3d Cir. 1993) (when evaluating jurisdiction and party's motion for remand, courts must look to the allegations contained in the complaint).

does not support even a colorable claim to the government contractor defense.

Although a defendant is not required to prove that an asserted defense is meritorious, the Court finds that GE has provided insufficient support for its assertion of the government contractor defense in the first instance.

### 2. Acting Under a Federal Officer

Even were the Court to find that GE had proffered a colorable federal defense, the Court would still find that GE has failed to provide any support for its claim that it was acting "under" a federal officer in supplying the Navy with marine steam turbines. Again, Mr. Hobson's affidavit contains no assertion that GE was acting under direction of the Secretary of the Navy or any other Naval officer in designing, manufacturing, or supplying the Navy with turbines or any other product. Although he claims to have had regular "business dealings" with commissioned officers and civilian employees of the Navy with regard to the design, purchase, and use of marine steam turbines (including those manufactured by GE), the affidavit does not aver that GE was acting under the direction of a federal officer in the alleged manufacture and supply of such products.

Notwithstanding that GE need not prove an airtight defense in order to remove an action to federal court pursuant to the federal officer removal statute, the Court cannot find that GE's limited showing demonstrates that GE was acting under a federal officer, particularly where the affidavit offered in support of GE's removal nowhere contains an allegation that GE was acting under such an officer.

### 3. Causal Nexus

Because GE has failed to demonstrate adequately that it has a colorable federal defense to Plaintiffs' claims, and has failed to show it was acting under a federal officer in supplying the Navy with

steam turbines, the Court questions whether GE can validly assert "a causal nexus between the claims and the conduct performed under color of a federal office." Feidt, 153 F.3d at 127. Even assuming GE could make such a showing, the Court would find that they have failed in this regard, as the Hobson Affidavit does not assert, much less support, a causal nexus between the injuries Plaintiffs allege and the marine steam turbines GE allegedly supplied the Navy. If anything, the Hobson Affidavit undercuts GE's allegation of such nexus, because Hobson has attested that GE's turbines "did not have any thermal insulation materials (whether containing asbestos or otherwise) anywhere on them. They were manufactured and shipped with only a coat of paint on the surface of the metal. GE did not manufacture, sell, distribute, or supply marine turbines equipped with thermal insulation, nor did it specify the material to be used to insulate its marine turbines." (Hobson Aff., ¶ 5.) Hobson appears to be claiming that the turbines GE supplied the Navy did not include asbestos-containing material, and he specifically attests that any "thermal insulation materials, including thermal insulation blankets, that may have been applied to GE's marine steam turbines after they left GE's manufacturing facility would have been supplied and installed by entities other than GE." (Id., ¶ 6.) Such allegations do not support GE's contention of a nexus between Plaintiffs' claimed injuries and the materials it allegedly supplied the Navy pursuant to the direction and specification of a federal officer.[3] Accordingly, for this additional reason, the Court finds GE has failed to make the showing necessary that this Court could exercise federal jurisdiction over this action pursuant to the federal officer removal statute.

---

[3] If anything, Hobson's testimony suggests that the Navy did not, in fact, specify or require that GE's steam turbines contain asbestos insulating materials, as he attests that GE did not supply or install such products on its turbines.

**IV.     CONCLUSION**

For the foregoing reasons, the Court finds that it lacks jurisdiction over this state law asbestos action. Accordingly, Plaintiffs' motion for remand will be granted and the case will be remanded to the Dauphin County Court of Common Pleas. An appropriate order follows.

## V.     ORDER

And now, this 22nd day of August 2005, upon consideration of Plaintiffs' motion to remand this action to state court, together with GE's brief in opposition and the affidavit of David Hobson offered in support thereof, and having found that GE has not satisfied its burden of demonstrating that removal is appropriate under 28 U.S.C. § 1442(a)(1), and for the reasons set forth in the within memorandum, **IT IS HEREBY ORDERED THAT** Plaintiff's motion to remand this action to state court (Doc. No. 4) is **GRANTED**.

**IT IS FURTHER ORDERED THAT** the within action is **REMANDED** to the Court of Common Pleas of Dauphin County, Pennsylvania.

The Clerk of Court is hereby directed to return the entire record to the Prothonotary of the Court of Common Pleas of Dauphin County and to close the file.

                                                  S/ Yvette Kane
                                                  Yvette Kane
                                                  United States District Judge